JOHN P. PARSONS, Appellant, *v.* EDITH M. PARSONS, Respondent.

First Department, April 30, 1920.

**Husband and wife — divorce — evidence.**

In an action for divorce in which the issues are limited to the question whether the defendant had commited adultery with a named corespondent, it is error to permit the defendant to prove misconduct between· the plaintiff and another.

Where the answer is in effect a general denial and contains no affirmative defense or counterclaim,· neither the reason for the separation of the parties nor the conduct of the plaintiff are in issue.

The motives which actuated the parties in separating and the plaintiff's motive in bringing the action are immaterial where the only issue involved is the defendant's adultery.

The verdict of the jury in favor of the defendant on the issue of adultery is clearly against the weight of the evidence.

APPEAL by the plaintiff, John P. Parsons, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 21st day of August, 1919, dismissing the complaint upon the merits, entered after a verdict in favor of the defendant on settled issues, and also from an order entered in said clerk's office on the 25th day of June, 1919, denying plaintiff's motion for a new trial made upon the minutes.

*Anthony J. Ernest* of counsel [*Daniel E. Hanlon,* attorney], for the appellant.

*Clark L. Jordan* of counsel [*F. Sidney Williams* with him on the brief; *Jordan & Williams,* attorneys], for the respondent.

LAUGHLIN, J.:

This is an action by a husband for a divorce. By a bill of particulars the issues became limited to plaintiff's charges that his wife had committed adultery with one Danby on the 20th, 21st, 23d and 24th days of March, 1919, in apartment 1-F, then occupied by the defendant and her daughter, ten years of age, in the apartment building known as No. 245

First Department, April, 1920.              [Vol. 191.

Fort Washington avenue in the borough of Manhattan, New York. The parties were married on the 19th of October, 1907, and resided together as husband and wife until November 4, 1918, when they separated, the husband leaving her and the two children, the daughter ten and a son nine years of age, and going to a hotel. In January, 1919, the husband returned and the parties attempted to resume marital relations but after a few days they agreed to separate and the husband again departed, leaving his wife and children in the apartment, where they had been residing. The daughter subsequently became ill with scarlet fever and on being notified thereof by his wife, the plaintiff called and at her request took the boy, in order that the boy might not contract the disease, to the residence of the parents of the husband in Philadelphia.

Defendant testified that she had repeatedly seen Danby, who was a foreigner and spoke but little English, on Riverside Drive near her apartment for a period of two months prior to the 1st of January, 1919, and that " finally he got so that when he passed me he raised his hat," and that on New Year's day they were both looking at the boats in the river and " we got talking about them; " that Danby then said to her that he walked on the drive a good deal and had seen her very often and asked if she would walk with him " sometimes," to which she replied, " Yes, I would sometimes," and she added, " and that is the way we did for quite a while; " that thereafter Danby called at her apartment from time to time to take her for a walk or to a picture show; that after first meeting Danby they walked together on the drive in the afternoon about twice a week for two weeks and then she did not see him until the latter part of February, when he commenced calling at her apartment and that he called once when her husband was there and then took her to a picture show and that they occasionally went to a picture show in the evening and had ice cream afterwards and then he would leave her at the door of the apartment house; that after her husband left her the second time, Danby called about twice a week or three times in all before her daughter became ill; sometimes in the afternoon and sometimes in the evening; that he came to dinner one Sunday shortly before her daughter became ill and remained as late as one or two o'clock and on

one occasion while both children were with her, remained all night and slept on the davenport; that this was after the apartment had been burglarized and some money had been stolen from her; that Danby remained quite frequently until two o'clock in the morning after her daughter became ill and helped her in waiting on the daughter; that on the twenty-third of March Danby was there to dinner as was also Miss Vroom; that the witness was greatly worried concerning her daughter who was very sick and was upset over the former burglary and on account of a fire in the apartment that day, which might have been serious had she not timely discovered it and she asked Miss Vroom to remain with her all night, and on Miss Vroom declining, she asked Danby to stay and he consented and said he could sleep on the davenport and that she said he could take her bed and that she could sleep with her daughter; that Danby retired between one and two o'clock in the morning and she proceeded to take a bath and as she was leaving the bathroom she heard a noise and thinking it was made by a burglar, she entered the room in which Danby was and attempted to awaken him when a flashlight was thrown into the room by her husband, who with two detectives and a friend had stealthily entered. She denied the charges of adultery, as did also Danby, who corroborated her with respect to the circumstances under which he was remaining in the apartment. Plaintiff's charges are based on these facts and on the attire and conduct of the wife when he and the others so entered the apartment. On the vital issue of fact presented by this evidence, we think the appellant was prejudiced by the reception over his objection and exception of incompetent evidence. Defendant was permitted to testify, over plaintiff's objection and exception that it was incompetent, immaterial and irrelevant, to a conversation with her husband concerning their separation. She testified, in substance, that her husband became unduly interested in Miss Vroom and that he favored their separating, and on his persisting in his attentions to Miss Vroom and accompanying her home, only a half mile distant, at midnight and remaining until three A. M. on several occasions, she consented to their separating; and when he returned and attempted to live with her again, he promised to amend

his conduct with respect to Miss Vroom, but that after letting her go home alone one night, he resumed his former conduct with respect to accompanying her home and remaining there very late, and when she again remonstrated with him he said that it would be better for them to separate, and thereupon they agreed to and did separate. This evidence was not within and had no bearing on the issues, which were confined to the charges of adultery by the wife. The answer was, in effect, a general denial and contained no affirmative defense or counterclaim. In these circumstances, neither the cause of the separation nor the conduct of the husband was at issue. The learned counsel for the defendant contends that the testimony was competent to show the relations of the plaintiff and the defendant and their separation in order that the jury might understand the circumstances of the defendant living alone in the apartment and as tending to show plaintiff's object in commencing the action. It was, of course, competent to show and was shown that the parties had separated, rendering it proper for the defendant to continue to reside in the apartment with her children; but the motives or reasons which actuated the parties in separating were immaterial as was also the plaintiff's motive in bringing the action. *Huntley* v. *Huntley* (73 Hun, 261), cited as an authority in support of the contention that the plaintiff's motive in bringing the action was to enable him to marry another may be shown, does not sustain that proposition. The testimony there held competent showed that what defendant did was collusively induced by the plaintiff, who in order to be relieved of the bonds of matrimony, outlined the plan by which the defendant was to afford evidence of an appearance of having committed adultery without in fact committing it, and it was held that such evidence that the conduct of the defendant was suggested by the plaintiff tended to corroborate his denial that he committed the offense. In the case at bar this evidence necessarily tended to prejudice the plaintiff in the eyes of the jury and it doubtless accounts for the verdict, for it would be quite natural for them to take the view that if the plaintiff was guilty of misconduct, he ought not to be heard to complain of like misconduct on the part of his wife; and such is the law, if the issue were properly pre-

sented.   (Code Civ. Proc. § 1758, subd. 4.)   In the case at bar the testimony so received over the objection and exception in no manner tended *to explain* the situation in which the defendant and Danby were found, for there was no claim or evidence that the plaintiff in any manner conspired to bring about her relations with Danby or was in any manner responsible therefor.   Of course evidence showing that the husband brought the defendant and Danby together and encouraged their intimacy would have been competent, but this testimony did not tend to establish such facts and on the defendant's testimony such was not the fact.   (See *O'Hara* v. *O'Hara*, 136 App. Div. 378.)

We are also of opinion that the verdict, which was accepted by the Special Term, is clearly against the weight of the evidence.   The gross indiscretion of the defendant in picking up an acquaintance with a stranger and in a comparatively short time becoming so intimate with him and in asking him to remain all night in her apartment and to occupy her bedroom, subjecting herself to be found in the compromising position in which she concedes she was when her apartment was thus entered and in then jumping into the bed with the corespondent to cover her nakedness, renders the testimony with respect to her innocence too improbable to have it accepted in the administration of justice; and we think the verdict would not have been rendered had it not been for the erroneous reception of the testimony, to which reference has been made.

It follows that the judgment and order should be reversed and a new trial granted, without costs.

DOWLING, PAGE, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial granted, without costs.   Settle order on notice.